**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**


**VARRY EDWARDS ANDERSON, et al**                                    **Plaintiffs**

**VERSUS**                                              **Cause No. 4:03cv311-MB**

**GENERAL MOTORS ACCEPTANCE
CORPORATION; et al**                                         **Defendants**

## ORDER

This cause comes before the court on the motion of defendants to dismiss, pursuant to

Fed. R. Civ. P. 12(b)(6). Plaintiffs have responded in opposition to the motion, and the court,

having considered the memoranda and submissions of the parties, concludes that the motion is

well taken and should be granted.

The second amended complaint in this action was filed by fourteen plaintiffs against

General Motors Acceptance Corporation ("GMAC"), GM, seven automobile dealerships and

four current or former employees of the dealership defendants. In their complaint, plaintiffs seek

recovery under Mississippi state law for defendants' allegedly unfair business practices and for

misrepresentations allegedly made in connection with retail installment sales contracts between

the parties. In their complaint, plaintiffs complain of the fact that GMAC allowed GM dealers to

utilize a subjective "Finance Charge Markup" system which gave dealers the discretion to

determine (within certain parameters) the interest rates which a particular customer would be

required to pay on car loans. Plaintiffs complain that the Finance Charge Markup program

constituted an unfair and deceptive financing practice which should be deemed contrary to

Mississippi law. Plaintiffs also allege that defendants should be held liable for fraud, based upon

statements allegedly made by vehicle salesmen that interest rates were "the best [a particular customer] could receive."[1]

Based upon the aforementioned allegations, plaintiffs assert many alternative theories of liability in this case, including fraud, violations of Mississippi consumer fraud statutes and negligent misrepresentation. Defendant GMAC has done a thorough job of rebutting each of these causes of action in its brief, and the court finds its arguments on these issues to be persuasive. The court also finds persuasive decisions from other courts in this district which have found allegations very similar to those raised by plaintiffs to lack merit under Mississippi law. *See, e.g. Gholston v. Ford Motor Credit Co.*, 2005 WL 2254075 (N.D. Miss. 2005); *Davis v. General Motors Acceptance Corp.*, 406 F.Supp.2d 698 (N.D. Miss. 2005). While the court agrees with and adopts the aforementioned authority, the complaint in this case fails for a more fundamental reason. That is, the complaint in this case improperly seeks a judicial remedy for a business practice which is best addressed, if at all, at the legislative and/or regulatory level.

It may validly be contended that, since shortly after the invention of the first automobile, a game of sorts has been ongoing between automobile dealers and automobile purchasers. This game has taken the form of automobile dealers attempting to ensure that a given customer pays as much as possible for a particular vehicle, while the customer has sought to pay as little as possible for the desired vehicle. The court does not deem it improper to take judicial notice of the fact that, in the interests of maximizing profits, certain automobile dealers have been known

---

[1]In their original complaint, plaintiffs also alleged that GMAC's loan practices had the effect of making it more difficult for African-American customers to obtain loans at low rates and that this disparity gave rise to violations of the Equal Credit Opportunity Act (ECOA). 15 U.S.C. §§ 1691-1691f. This court has previously ruled that these ECOA claims are barred by the applicable statute of limitations, however.

to utilize clever devices, including the offering of unneeded accessories and overpriced service warranties.

This lawsuit is essentially premised upon the notion that, however adversarial the actual automobile purchasing process may be, the *financing* of an automobile should be deemed off-limits to individualized negotiating on the part of dealers. Plaintiffs contend that the GM dealerships in this case should have been mere conduits for the obtaining of consumer finance loans offered by GMAC, based upon interest rates set by GMAC. While plaintiffs' contention does not lack appeal from the perspective of the automobile purchaser, what plaintiffs *do* lack is any legal authority indicating that the "Finance Charge Markup" system utilized by the defendants in this case might be *unlawful*. This court has little difficulty in accepting plaintiffs' argument that the dealership defendants in this case utilized the "Finance Charge Markup" system to maximize their profits on the automobile purchases at issue herein. In their brief, plaintiffs offer alternative financing practices which, this court will readily agree, would be far more desirable from the perspective of the consumer. This court would not deem it unreasonable for the Mississippi Legislature to provide additional consumer protections in the present context, such as by requiring additional disclosures regarding the details of financing transactions. At the same time, this court is unwilling to "don its legislative cap" and presume to make illegal by judicial fiat a practice which, at least judging from plaintiffs' brief, has not heretofore been declared illegal.

While it appears to this court that the main thrust of plaintiffs' complaint relates to the nature of the Finance Charge Markup program itself, the court would note the complaint also contains allegations of numerous instances of alleged fraud. These fraud allegations are based

upon statements allegedly made by salesmen that the quoted interest rates were "the best they could receive" and that plaintiffs relied upon such statements to their detriment. Specifically, plaintiffs allege as follows:

> Plaintiffs each asked if they were getting the best interest rate possible and were uniformly told by the defendants that the deal was the best they could receive or that the interest rate was the best rate that these defendant would be able to get from the plaintiffs. These representations were not true and the defendants knew or should have known that they were not true. The plaintiffs relied upon these representations.

In their brief, defendants treat these allegations with considerable skepticism, and it does appear rather remarkable that each of the plaintiffs in this case would have heard substantially identical assurances from different dealers and that they would have all relied upon those statements in deciding to purchase their vehicles.[2] The legal context of this case gives rise to suspicions that plaintiffs may be attempting to use fraud allegations as a way of circumventing their lack of authority indicating that the Finance Charge Markup program might be illegal.

At any rate, this court is required to accept the allegations of plaintiffs' complaint as true, and, having done so, the court nevertheless concludes that the allegations of the complaint involve nothing more than simple "puffing" which are insufficient to give rise to liability for fraud under Mississippi law. *Thomas v. Mississippi Val. Gas Co.*, 237 Miss. 100, 113 So.2d 535 (Miss. 1959). While it is true that the automobile dealer is in an advantageous position in any automobile negotiation, it is also clear that consumers can and do ascertain for themselves

---

[2]This presumably means that, as part of their burden of proving causation, plaintiffs would be required to persuade a jury at trial that, if a particular salesman had not used this express sales language, then they would have refused to engage in the credit transaction in question and walked out of the dealership. Proving this allegation to the satisfaction of a jury would likely be a tall order at any trial.

whether a particular quoted price or interest rate is as advantageous as a salesman represents, such as by contacting other dealers or by doing independent research.   Indeed, this court can discern little difference between the alleged statements made by the salesmen in this case and statements that a particular dealership has the "lowest prices anywhere" or words to that effect. While the court agrees with defendants that the alleged statements of the dealers in this case are not plead with the specificity required by Fed. R. Civ. P. Rule 9(b), the court concludes that, regardless, such "sales talk" or puffing would not support a fraud action under Mississippi law.

In light of the foregoing, the court concludes that plaintiffs lack any Mississippi authority whatsoever which might support a conclusion that the sales and financing practices as alleged in the complaint are unlawful.  This court is unwilling to create such authority on its own motion, and the motion to dismiss is therefore due to be granted.

It is therefore ordered that defendants' motion to dismiss [134-1] is granted.

A separate order will be issued this date, in accordance with Fed. R. Civ. P. 58.

SO ORDERED, this the 7th day of March, 2007.


**/s/ Michael P. Mills**
**UNITED STATES DISTRICT JUDGE**